UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Leo Moran,

    Plaintiff,

    v.                                         Civil Action No. 1:09-CV-227

Andrew Pallito,

    Defendant.

## REPORT AND RECOMMENDATION
(Doc. 7)

    Plaintiff Leo Moran, a Vermont inmate proceeding *pro se*, brings this action against Andrew Pallito, Commissioner of the Vermont Department of Corrections ("DOC"), alleging constitutional violations. Specifically, Moran claims (1) that a computer problem in the prison law library prevented him from performing legal work for himself and others for a period of up to 24 hours, and (2) that the Department of Corrections failed to help him find employment and a residence after his release from prison in 2002. With respect to the second allegation, Moran contends that he was forced to move out of state, resulting in a probation violation and re-incarceration.

    Pending before the Court is defendant Pallito's motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). The motion contends that the complaint fails to allege personal involvement on the part of Commissioner Pallito, and that it does not request any specific relief. The motion also argues that the alleged computer problem did not amount to a constitutional violation. For the reasons set forth below, I recommend that

the motion to dismiss (Doc. 7) be GRANTED, and that Moran be granted leave to amend his complaint.

**Factual Background**

For the limited purpose of ruling on the motion to dismiss, the facts set forth in the complaint will be accepted as true. In 2002, Moran was convicted of lewd and lascivious conduct and sentenced to one to five years in prison, all suspended except for ten days. He claims that he served his prison time and completed five years of probation without a violation, but that his probation officer refused to discharge him because a therapist wanted him to continue with sex offender treatment.

In 2007, Moran was charged with embezzlement. He subsequently quit his job, and was unable to find other work in Vermont while the embezzlement case was pending. Finding himself unemployed and without funds, he moved to Massachusetts to live with his sister, purportedly with his Probation Officer's permission. Moran continued to return to Vermont for required weekly meetings, and claims that he was in compliance with all probation directives. Nonetheless, the DOC ultimately decided that the sister's home was unsuitable because children resided in her building, and that he was in violation of his probation. Moran was returned to prison on November 6, 2008.

Moran now contends that his inability to find work in Vermont forced him to move to Massachusetts, and that he should not have been found in violation "for not performing a condition of probation that is impossible to perform." (Doc. 4 at 3.) He also claims that his probation extended beyond his maximum release date, that his

sentence has expired, and that he is being discriminated against because he is a sex offender.

Moran's second claim pertains to his role as the prison law librarian. He alleges that on August 24, 2009, the computers stopped working and that, as a result, he was unable to do his own legal work or assist other inmates. When he filed his hand-written complaint on August 25, 2009, the computers were reportedly "still down. Not only do I feel this is a violation of my 8th Amendment right for cruel and unusual punishment, but this is a violation of constitutional rights that inmates have access to court documents." *Id.* at 1.

The complaint does not include a prayer for relief. However, in his opposition to Commissioner Pallito's motion to dismiss, Moran states that he is "seeking compensatory damages based on the amount of time I have been in jail for not having my probation revoked as of now." (Doc. 10 at 1.)

## Discussion

### I. Motion To Dismiss Standard

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right of relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86,

91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## II. Personal Involvement

Pallito argues that the complaint does not set forth facts to show that he was personally involved in any alleged wrongdoing. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In fact, the only mention of Pallito anywhere in the case is in the caption of some of Moran's filings.

Moran claims that his probation was violated wrongfully, that he has been held beyond his maximum sentence, and that a computer problem temporarily prevented him from doing legal work. There is no claim that Commissioner Pallito was directly involved in any of these events. Nonetheless, construing the complaint liberally, Moran may be claiming that due to his supervisory role as Commissioner, Pallito may still be held liable.

"[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al- Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional

4

violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, insofar as Moran is alleging supervisor liability, his complaint as currently drafted is deficient. He does not claim that Pallito was either directly involved in, or even aware of, his claims. Nor does he allege that Pallito helped create a policy or custom that sanctioned the allegedly-wrongful conduct. There is no claim of grossly negligent supervision, and again, no suggestion that Pallito was aware of any problems such that he could now be liable for failing to take appropriate corrective action. I therefore

5

recommend that the Court GRANT Pallito's motion to dismiss on the basis of a failure to claim sufficient personal involvement.

## III. Access To Courts Claim

Pallito also argues that dismissal is warranted on Moran's claim that the temporary deprivation of access to computers violated his constitutional rights. Moran appears to be claiming that because he did not have access to a computer for a period of time, and thus was unable to type certain "letters and documents" for himself and other inmates, his right to engage in litigation was violated. (Doc. 1 at 1.) He brings his claim under the Eighth Amendment.

An "access to the courts" claim does not generally implicate the Eighth Amendment. *See Mitchell v. Bell*, 2006 WL 3043126, at *12 (N.D.N.Y Oct. 23, 2006). Indeed, in order to show that prison conditions violated the Eighth Amendment, an inmate must show a serious deprivation of a "basic human need." *See Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). Because an inability to type letters or other documents does not constitute a serious deprivation, Moran has failed to set forth a plausible Eighth Amendment claim.

The U.S. Supreme Court has held that, rather than the Eighth Amendment, it is the First Amendment that grants prisoners "a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *see Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004). This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828;

6

*Bourdon*, 386 F.3d at 92. However, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996). Furthermore, a plaintiff must show that the defendant took or was responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts. *See Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).

Moran's claim falls well short of a viable First Amendment allegation. He alleges only that he was unable to type certain documents on August 24 and 25, 2009. He does not allege that he was denied access to either legal materials or legal assistance, or that his efforts to pursue a specific legal claim were hindered in any way. Defendant Pallito's motion to dismiss this claim should therefore be GRANTED.

## IV. Leave To Amend

The Second Circuit instructs that a district court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). As discussed above, Moran's sparse pleading does not connect Commissioner Pallito to the alleged wrongdoing. Nor does his access to the courts claim satisfy the requirements of either a First or Eighth Amendment violation.

The Eighth Amendment claim is clearly misplaced, and leave should not be granted to amend that claim. *See Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d

Cir. 2006) (leave to amend may be denied when amendment would be futile). As to Moran's other claims, it is conceivable that he was denied access to the courts, and that Commissioner Pallito was involved in the alleged wrongdoing such that he may be held liable. Furthermore, it is plain from his response to the motion to dismiss that, despite the complaint's lack of a prayer for relief, he is seeking compensatory damages. Consequently, I recommend that the Court allow Moran 30 days in which to file an amended complaint. Failure to comply with that deadline should result in the dismissal of the case with prejudice.

## **Conclusion**

For the reasons set forth above, I recommend that defendant Pallito's motion to dismiss (Doc. 7) be GRANTED, and that Moran be allowed 30 days in which to amend his complaint as set forth above. Failure to file an amended complaint in a timely manner should result in dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 7th day of May, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).